**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

CIVIL ACTION NO. 3:14-CV-419-H

**JAMES RUSSELL SMITH**                                                                 PLAINTIFF
1624 W. Monique Drive
Scottsburg, IN 47170

v.                                                       **COMPLAINT**

**INTEGRAL STRUCTURES, INC.**                                            DEFENDANT
Serve:   Thomas K. Eckert
             13720 Aiken Road
             Louisville, KY 40245

*   *   *   *   *   *   *

**Nature of Action, Jurisdiction, and Venue**

The Plaintiff, by Counsel, hereby states for his Complaint in this matter as follows:

1. This is an action brought pursuant to 29 U.S.C. § 1132(a) of the Employee Retirement Income Security Act ("ERISA") (29 U.S.C. § 1001, *et seq.*), for clarification and enforcement of rights and future rights under a retirement plan subject to ERISA, to enforce rights under the terms of said plan, and to recover benefits due to him under the terms of the plan.

2. Subject matter jurisdiction over this action is supplied by 29 U.S.C. §§ 1331, 1332 and 29 U.S.C. § 1132(e) in that this civil action arises under the laws of the United States, including, but not limited to 29 U.S.C. § 1132(a).

3. This Court has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

1

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2).

## The Parties

5. The Plaintiff reiterates and incorporates by reference the foregoing allegations.

6. The Plaintiff, James Russell Smith, is a former employee of the Defendant Integral Structures, Inc. ("Integral Structures"), and is a plan participant and beneficiary as contemplated in 29 U.S.C. §§ 1002(7) and (8).

7. Plaintiff is a citizen of Scott County, Indiana.

8. Integral Structures is a Kentucky corporation doing business in Jefferson County, Kentucky, within the territorial jurisdiction and venue of this Court.

9. Integral Structures operated a construction/design business in Louisville, Kentucky, at which business the Plaintiff was employed from January 1985 until January 2014.

10. Integral Structures is and was at all relevant times an "employer" as contemplated by 29 U.S.C. § 1002(5).

## Allegations Common to All Counts

11. Upon information and belief, Integral Structures is the administrator of one or more retirement plans, which are employee pension benefit plans as contemplated in 29 U.S.C. § 1002(2) and employee benefit plans as contemplated in 29 U.S.C. § 1002(3), in which plan or plans the Plaintiff is a participant and/or a beneficiary.

12. At some time in 1989, Smith and Defendant Integral Structures entered a Salary Continuation Agreement, the terms of which provided for retirement benefits to Plaintiff.

13. Upon information and belief, at the time of the 1989 Agreement, majority ownership of Defendant Integral Structures was held by Dick and Beverly Eckert.

14. On August 19, 1996, Smith and Defendant Integral Structures entered a second, revised Salary Continuation Agreement. (Exhibit A.) According to its terms, the 1996 Agreement incorporates and references a "top hat" retirement plan, established by the Defendant to provide deferred compensation to its management and other highly compensated employees.

15. The "top hat" retirement plan is subject to the requirements of ERISA.

16. The Salary Continuation Agreement is a contract between Plaintiff and Defendant which is enforceable under federal common law.

17. The Salary Continuation Agreement is an employee retirement benefit plan subject to ERISA.

18. The 1996 Agreement provides that Plaintiff is eligible for normal retirement at age 65, at which time he is entitled to benefits of $1,666.66 per month for 240 months.

19. The 1996 Agreement contains separate provisions for early retirement, disability, death prior to retirement, sale of the company, termination of employment by the employee, and discharge of the employee for cause. It contains no provision for discharge of the employee for reasons other than cause.

20. The terms of the 1996 Agreement state that its purpose was to induce Plaintiff to remain employed as the company's Foreman, due to his "experience and knowledge of considerable value to the Company."

21. Plaintiff continued to work for Integral Structures under the terms of the 1996 Agreement for 17 years, in reliance on the terms of the Salary Continuation Agreement, for a total of 24 years under the terms of both the 1989 and 1996 Agreements.

22. Upon information and belief on or about 2011, majority ownership of the company was transferred from Dick and Beverly Eckert to their son, Thomas Eckert upon the death of his parents, the company founders.

23. In December 2013, Plaintiff learned from a coworker that the company was planning to terminate him effective January 1st. He contacted Thomas Eckert, who denied this and instructed Smith to report to work in January 2014.

24. Company President Thomas Eckert called a meeting to announce that he was shutting down the construction side of the business and terminating its employees, including Smith in January 2014.

25. Smith requested benefits under his retirement plan. Eckert informed him that he would receive nothing because he was not yet 65, and therefore was ineligible for benefits.

26. Upon information and belief, in January 2014 Integral Structures sold the construction portion of its business, or substantially all of its assets (including tools, equipment, and company vehicles), to I&S Construction, owned by Bill and Lena House.

27. Integral Structures continues to operate a design business and contract for construction work.

28. By letter of January 28, 2014, Plaintiff, by counsel, demanded payment under the 1996 Agreement's "Sale of Company" provision, since substantially all of the assets of the company had been sold.

29. By letter of January 31, 2014, Defendant, by counsel, stated that there had been no sale of the company and no change of its ownership, and therefore no event that would trigger an obligation to pay Plaintiff under the 1996 Agreement.

30. Plaintiff, by counsel, requested a copy of any and all plan documents for the "top hat" ERISA Plan in which he was a participant.

31. Defendant, by counsel, stated that no such ERISA Plan documents could be located.

32. Defendant has been unable to furnish to Smith, as a Plan participant, a copy of the top hat plan or any information which would confirm that the Company was operating an unqualified deferred compensation plan in accordance with federal law, that should be exempt from the provisions of ERISA relating to employee benefit plans.

33. The Plaintiff has exhausted all administrative remedies available under the ERISA Plan, or no administrative remedies are available under the ERISA Plan.

34. Defendant has failed to establish and follow reasonable procedures for participants and beneficiaries, including Plaintiff, to file and process claims under the ERISA Plan.

## Count I – Breach of Agreement

35. The Plaintiff reiterates and incorporates by reference the foregoing allegations.

36. Section 6b of the 1996 Agreement, entitled "Sale of the Company," provides in part as follows:

> In the event that a new or different owner(s) of the majority shares of the company (i.e. Integral Structures, Inc.) or substantially all of its assets elects not to continue the Salary Continuation Plan, then the Employee shall have transferred to him/her a cash account that is the lesser of (i) the equivalent to the present value of a proportionate but reduced benefit at age 65 ($1,666.66 per month for 240 months) that his/her number of years of service since plan inception bears to the total number of years of service to his/her retirement at age 65 which he/she would have rendered under this contract had the company not been sold or (ii) the total cash values of any key man life insurance owned by the Corporation on Employee's life.

37. Upon information and belief, there has been a change in the majority ownership of shares since the 1996 agreement through the death of Company owners and founders.

38. The decision not to continue Plaintiff's Salary Continuation Agreement and ERISA Plan was made by a new or different owner of the majority shares of the company after 1996, triggering liability for payment under section 6b.

39. Defendant Integral Structures has breached the agreement and violated 29 U.S.C. § 1132(a) when it refused to pay amounts due to the Plaintiff under Section 6b of the Agreement.

40. As a result of said breach, Plaintiff has sustained damages for which he is entitled to recover.

## Count II – Breach of Employment Contract

41. The Plaintiff reiterates and incorporates by reference the foregoing allegations.

42. The Salary Continuation Agreement was an employment contract for continuing employment through retirement.

43. The Salary Continuation Agreement was a contract of employment terminable only according to its express terms.

44. A discontinuation of business operations or the lay-off of Smith were not terms under which the Salary Continuation Agreement, as an employment agreement, could be terminated.

45. The Company violated the contractual terms of the Salary Continuation Agreement, as employment agreement, by its termination of the Plaintiff as an employee and disavowal of ERISA Plan benefits to him.

46. As a result of said breach, Plaintiff has sustained damages for which he is entitled to recover.

## Count III – Breach of ERISA Plan Terms Pursuant to 29 U.S.C. § 1132(a)(1)(B)

47. The Plaintiff reiterates and incorporates by reference the foregoing allegations.

48. Plaintiff Smith properly made a claim for benefits under the ERISA Plan.

49. Plaintiff requested, but did not receive, a Summary Plan Description and other formal plan documents.

50. Plaintiff attempted to exhaust his administrative remedies under the ERISA Plan.

51. Plaintiff is entitled to retirement compensation under the express terms of the 1996 Salary Continuation Agreement and the ERISA Plan referenced therein.

52. Plaintiff was denied the benefits of the Salary Continuation Agreement and the ERISA Plan.

53. As a result, Plaintiff has sustained damages for which he is entitled to recover.

### Count IV – Violation of 29 U.S.C. § 1133

54. The Plaintiff reiterates and incorporates by reference the foregoing allegations.

55. Defendant failed to provide Plaintiff with adequate written notice setting forth specific reasons for its denial of benefits under the ERISA Plan.

56. Defendant failed to provide Plaintiff with a full and fair review of its decision to deny him benefits under the ERISA Plan.

57. As a result, Plaintiff has sustained damages for which he is entitled to recover.

### Count V - Promissory Estoppel

58. The doctrine of promissory estoppel acts to assure that Smith receives the benefits of the Plan and that the Company is estopped from denying those benefits based upon Plan provisions.

59. In the alternative, the Plan provisions are ambiguous with regard to Smith's benefits based upon a business decision to discontinue his employment through lay-off, or for a discontinuation of business operations affecting his job.

60. The requirements for promissory estoppel are met in that (1) the Company allowed Smith to continue to perform in reliance of the Plan for many years in reliance to the language of the Plan agreement; (2) the Company was aware for this same period of time that it would disavow the terms of the Plan if it discontinued business operations; (3) the Company intended that Smith would remain in its employ in reliance of the Plan until decisions were made to discontinue the business; (4) Smith was unaware of the true facts that the Company considered lay-off or discontinuance of business operations to not be covered by the Plan; and (5) Smith reasonably and justifiably relied upon the representations of the Plan in making his career employment with the Company.

61. The Company must be estopped from denying Smith benefits under the Plan based upon the reasonable expectations communicated by the Company, its agents, the terms of the Plan, itself and Smith's justifiable and reasonable reliance upon these representations.

### Count VI – Equitable Estoppel

62. The doctrine of equitable estoppel operates to assure Smith's participation in the benefits of the Plan, and estops the Company from asserting the terms of the Plan to deny Smith his retirement benefits.

63. The doctrine of equitable estoppel acts to assure that Smith receives the benefits of the Plan and that the Company is estopped from denying those benefits based upon Plan provisions.

64. In the alternative, the Plan provisions are ambiguous with regard to Smith's benefits based upon a business decision to discontinue his employment through lay-off, or for a discontinuation of business operations affecting his job.

65. The requirements for equitable estoppel are met in that (1) the Company allowed Smith to continue to perform in reliance of the Plan for many years in reliance to the language of the Plan agreement; (2) the Company was aware for this same period of time that it would disavow the terms of the Plan if it discontinued business operations; (3) the Company intended that Smith would remain in its employ in reliance of the Plan until decisions were made to discontinue the business; (4) Smith was unaware of the true facts that the Company considered lay-off or discontinuance of business operations to not be covered by the Plan; and (5) Smith reasonably and justifiably relied upon the representations of the Plan in making his career employment with the Company.

66. The Company must be estopped from denying Smith benefits under the Plan based upon the reasonable expectations communicated by the Company, its agents, the terms of the Plan, itself and Smith's justifiable and reasonable reliance upon these representations.

67. The Company's denial of benefits to Smith under the Plan, after allowing him to work for over 17 years in reliance of the Plan, amounts to extraordinary circumstances which justify estoppels principles to protect Smith's rights and entitlements to Plan benefits.

WHEREFORE, Plaintiff demands as follows:

    A.    Adjudication of Plaintiff's rights based upon breach of contract and an award of damages in the amount of benefits based upon a change of control provisions.

B. Adjudication of the Plaintiff's current and future benefit rights, including a determination that all deprivation of his vested rights is unlawful, and imposition of a judgment requiring restoration of vested rights of which Plaintiff has been deprived.

C. Injunction and all other appropriate equitable relief, prohibiting unlawful deprivation of vested rights and requiring restoration of vested rights of which Plaintiff has been deprived.

D. Imposition on the Defendant Integral Structures, Inc. of daily liability to Plaintiff as specified in 29 U.S.C. § 1132(c), and requirement that the Defendant provide information and benefit statements required by ERISA.

E. The right to join additional parties and amend the complaint as information heretofore not provided is disclosed.

F. Costs herein expended, including reasonable attorney fees and witness fees.

G. All further relief to which the Plaintiff may be entitled.

H. Trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED,

s/Don Meade
DON C. MEADE
BENJAMIN S. BASIL
ALISON MESSEX
PRIDDY, CUTLER, NAAKE & MEADE, PLLC
800 Republic Building
429 West Muhammad Ali Blvd.
Louisville, KY 40202
Tel.: (502) 632-5290
Fax: (502) 632-5291
dmeade@pcmmlaw.com
COUNSEL FOR PLAINTIFF