UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-00419-GNS-DW

JAMES RUSSELL SMITH                                                                                    PLAINTIFF

v.

INTEGRAL STRUCTURES, INC.                                                                    DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 32), and Plaintiff's Motion for Leave to Amend Complaint (DN 31). The motions have been fully briefed and are ripe for decision. For the reasons stated below, Defendant's motion is **GRANTED**, and Plaintiff's motion is **DENIED**.

### I.     BACKGROUND

This action arises from the termination from employment of Plaintiff, James Russell Smith ("Smith"), and his claim for retirement benefits arising under his 1996 Salary Continuation Agreement ("SCA") with his former employer Defendant Integral Structures, Inc. ("ISI"). (Compl. 3, DN 1). The agreement provided for $1,666.66 per month for 240 months once Smith reached age 65. (Compl. 3). The Section 6 of the SCA provided that all rights under the agreement terminate if Smith's employment ended for reasons other than total disability or the sale of the company to a third party. (Compl., Ex. 3, DN 1-2). Section 6(b) defined "sale of the company" as sale of "substantially all" of ISI's assets to "new or different owners" or when such owners became "majority shareholders" in the company. (Compl. Ex. 4, DN 1-2). In 2011,

majority ownership of ISI was transferred from Dick and Beverly Eckert, to their son, Thomas Eckert ("Eckert").  (Compl. 4).  In January 2014, Eckert announced he was shutting down the construction portion of the business and Smith was terminated before he reached age 65. (Compl. 4).  On June 6, 2014, Smith filed this action asserting claims of breach of contract and violations of 29 U.S.C §§ 1132(a)(1)(B), and 1133 of the Employee Retirement Income Security Act ("ERISA").  (Compl. 1).

## II.     JURISDICTION

The Court has subject matter jurisdiction in that this civil action arises under the laws of the United States, including, but not limited to 29 U.S.C. § 1132(a).  The Court has supplemental jurisdiction over Smith's state law claims pursuant to 28 U.S.C. § 1367(a).

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  There is no genuine issue of material fact when "looking to the record as a whole, a reasonable mind could come to only one conclusion . . . ." *Mickler v. Nimishillen & Tuscarawas Ry. Co.*, 13 F.3d 184, 186 (6th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).  "When moving for summary judgment the movant has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists 'a genuine issue for trial.'" *Id*. (citing *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004)).

While the Court views the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Plaintiff Is Not Entitled to Benefits Under the SCA

"[A] breach of contract claim against a defendant arising out of a denial of benefits is essentially a claim for benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), and should be characterized as an ERISA action." *Barrow v. Aleris Int'l, Inc.*, No. 1:07CV-110-JHM, 2007 WL 3342306, at *7 (W.D. Ky. Nov. 7, 2007) (citation omitted). In order to obtain ERISA benefits pursuant to an employee retirement agreement, the plaintiff's rights must vest before he is entitled to ERISA benefits. *See Crawford v. TRW Auto. U.S. LLC*, 560 F.3d 607, 610 (6th Cir. 2009). "To vest benefits is to render them forever unalterable." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998). Rights vest under ERISA subject to the minimum requirements of 29 U.S.C. §§ 1053(a)(1)-(2). *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 441 (1999). All vesting requirements set above the statutory minimum are established by the private agreement between the parties. *See id*. In order to determine vesting of ERISA benefits, the Court's analysis involves consideration of the terms of the agreement between the

parties to determine if benefits are "conferred, vested, or terminated." *Price v. Bd. of Trs. of Ind. Laborer's Pension Fund,* 707 F.3d 647, 650 (6th Cir. 2013) (citation omitted). Specifically, the Court must consider whether a condition precedent occurred sufficient to vest Smith's benefits under the SCA. *See id*. at 654.

This issue here is whether Smith's rights vested under the SCA prior to his termination. This Court dealt with this same issue previously in ruling on ISI's Motion to Dismiss and found that Smith's rights had plausibly vested under the SCA. (Order 3-6, DN 22). Section 6(b) of the SCA reads:

> In the event that a new or different owner(s) of the majority shares of the company (i.e. Integral Structures, Inc.) or substantially all of its assets elects not to continue the Salary Continuation Plan, then the Employee shall have transferred to him/her a cash account that is the lesser of (i) the equivalent to the present value of a proportionate but reduced benefit at age 65 ($1,666.66 per month for 240 months) that his/her number of years of service since plan inception bears to the total number of years of service to his/her retirement age 65 which he/she would have rendered under this contract had the company not been sold or (ii) the total cash values of any key man life insurance owned by the Corporation on Employee's life. The following example will illustrate the arithmetic for (i).
>
> Assume that an Employee's annual retirement benefit at normal retirement age 65 is $15,000.00. Assume further that the employee at the inception of the Salary Continuation Plan (date of this agreement) was 35 years old, it follows that the Employee would have 30 years to earn the $15,000.00 benefit. If he only served 10 years under the Salary Continuation Agreement, which is one third of the total anticipated service, he/she would earn an annual $5,000.00 retirement benefit and, in the event this plan is not continued by the new owner, the Employee would be entitled to the present value of the $5,000.00 annual benefit calculated at the then prevailing prime rate of interest.

(Def.'s Mot. for Summ. J. Ex. B, at 4, DN 32-4 [hereinafter "SCA"]).

It is undisputed between the parties that Smith's rights only vest under the SCA if: (1) a transfer of ownership occurred;[1] and (2) this transfer caused a suspension of benefits (i.e.,

---

[1] Under the SCA, this event is either a transfer of the majority of shares to a new owner or sale of substantially all assets. (SCA 4).

Smith's termination). The parties primarily focus on the latter requirement. Therefore, the Court considers whether the transfer of the majority of shares to a new owner caused Smith's termination.

The primary reason the Court previously declined to dismiss Smith's case on the pleadings was that Smith had alleged the transfer of ISI occurred in 2011, prior to his termination in 2014. (Order 3-6). Smith now appears to concede that the transfer of ownership as contemplated by the SCA occurred in 1999, not 2011. (Pl.'s Resp. to Def.'s Mot. for Summ. J. 20, DN 40 [hereinafter Pl.'s Resp.]). Therefore, the Court considers whether there is a genuine issue of material fact regarding whether a sale of the company in 1999 caused Smith's termination in 2014. The Court finds there is not. ISI again cites P*arker v. Union Planters Corp.*, 203 F. Supp. 2d 888, 900-01 (W.D. Tenn. 2002), as support for its argument the chain of causation between the sale and the termination has been broken. (Def.'s Mot. for Summ. J. 17-18, DN 32). The Court previously found *Parker* unpersuasive because the triggering event and termination were separated by a span of 16 years in the case, whereas Smith had alleged a period of only 3 years. (Order 5). *Parker* is now applicable, however, because discovery has revealed that a transfer of assets occurred twelve years earlier than Plaintiff alleged. (T. Eckert Dep. 6:4-6:16, 8:6-8:25, Mar. 23, 2016, DN 32-3; T. Eckert Aff. ¶ 2, DN 35-2). In *Parker*, the court found that 16 years between the triggering event and termination was enough to break the chain of causation.

Here, Smith claims that the change of ownership that occurred in 1999 caused his termination in 2014. (Pl.'s Resp. 20-21). Similar to the facts in *Parker*, the Court finds that 15 years between a triggering event and termination is too long to causally link the two events for the purpose of vesting Smith's rights under the SCA. *See Parker*, 203 F. Supp. 2d at 900-01.

Smith provides no other evidence indicating his termination was due to the 1999 change of ownership. Instead, Smith argues that the parties intended the SCA to run indefinitely. (Pl.'s Resp. 20-21). It would be patently unreasonable, however, to construe SCA 6(b) to extend 15 years after a triggering event without express language indicating such intent to that effect. *See Parker*, 203 F. Supp. 2d at 900-01. Therefore, the Court finds that the 1999 change of ownership and Smith's termination in 2014 are not causally linked under the circumstances presented.[2] As a matter of law, Smith is not entitled to benefits under the SCA.

**B.      Defendant Is Not Subject to Civil Penalties Under 29 U.S.C. § 1132**

A plan administrator who fails to notify a qualifying party within 14 days of the date of its notification of a qualifying event may be liable for a daily penalty accruing from the date of the failure, as determined in the Court's discretion. *See* 29 U.S.C. § 1132(c). The Sixth Circuit has held that penalties should not be imposed under Section 1132(c) unless the beneficiary can establish prejudice or that the plan administrator acted in bad faith. *See Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068-69 (6th Cir. 1994) (citations omitted). Smith has not alleged any prejudice, nor has he established a genuine issue of material fact regarding bad faith. Therefore, because Smith has provided no evidence that he is entitled to civil penalties, this claim will be dismissed.[3]

---

[2] In light of the Court's ruling that Smith is not entitled to benefits, it is unnecessary to address whether the SCA is a "top hat" plan under ERISA.

[3] Since Smith is not entitled to benefits, remand under 29 U.S.C. § 1133 to the ISI plan administrator would be a useless formality. *See Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir. 1996) (remand to plan administrator is an inappropriate remedy if a remand would serve no useful purpose).

### C. Plaintiff's Estoppel Claims Must Be Dismissed

The principle of equitable estoppel may be applied to ERISA claims, but only if the plan documents at issue contains ambiguous language. *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998). The elements for equitable estoppel are:

> (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Id.* (citation omitted). None of the *Sprague* factors are applicable to this matter. At a minimum, neither do the provisions of the SCA amount to a representation of fact, nor has Smith established that ISI intended such, especially when there is no ambiguity in the SCA.[4] Therefore, Smith's equitable estoppel claims must be dismissed.

### D. Plaintiff's Motion to Amend

Finally, the Court denies Smith's Motion to Amend. Smith seeks to amend his Complaint in order to establish a claim for a breach of fiduciary duty under 29 U.S.C. § 1109(a) against Eckert. (Pl.'s Mot. to Amend Compl. 5, DN 31). While leave to amend is granted freely, the Court need not grant leave to amend when such an amendment is futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile "if such complaint, as amended, could not withstand a motion to dismiss." *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres., Dep't of Hous. & Urban Dev., City of Louisville*, 632 F.2d 21, 23 (6th Cir. 1980) (citation

---

[4] Smith also appears to allege the SCA established "for cause" employment because Section 6(b) does not explicitly state that Smith could be terminated at will. (Pl.'s Resp. 31, DN 40). This argument is misguided. Under Kentucky law, it is well established that an employment contract is at will unless expressly stated otherwise. *See Shah v. Am. Synthetic Rubber Corp.*, 655 S.W.2d 489, 490 (Ky. 1983). The absence of "for cause" or "at will" terms does not establish an ambiguity in the SCA.

omitted). The Sixth Circuit has held that a plaintiff cannot re-characterize a failed Section 1332 claim as a claim for a breach of fiduciary duty under Section 1109(a)." *Lee v. MBNA Long Term Disability & Benefit Plan*, 136 F. App'x 734, 746 (6th Cir. 2005). Since the Court has found that Smith is not entitled to benefits under Section 1132, Smith's Section 1109 claim must fail as well. *See id*. Thus, Smith's Motion to Amend is therefore denied as futile.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 32) is **GRANTED**, and Plaintiff's Motion for Leave to Amend (DN 31) is **DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**

August 31, 2016

cc: counsel of record